IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PABLO ANDRES COBB,

        Petitioner,

vs.

SCOTT KERNAN, Warden, et al.,

        Respondents.

Case No. 2:04-cv-1299 JKS EFB

ORDER

      Petitioner, a state prisoner proceeding pro se, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

      On July 3, 2007, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days. Petitioner has filed objections to the findings and recommendations and Respondents have filed a reply to petitioner's objections.

      In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this Court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, with particular attention to those portions relevant or pertinent to the objections raised, the Court finds the findings and recommendations to be supported by the record and by proper analysis. Each of Petitioner's objections shall be discussed in turn.

1. Right to Remain Silent

      The magistrate judge found that Petitioner was not entitled to relief on this ground because, as the state court reasoned, "even if Miranda violations occurred during the first phase of the

1

interrogation, any possible 'taint' was dissipated prior to petitioner's confession by the re-administration of *Miranda* warnings and petitioner's waiver of his constitutional rights." Docket No. 20 at 23.  In the view of the state court and the magistrate judge, the break between the first and third phases of the interrogation, coupled with re-administration of the *Miranda* warnings, removed any taint created by Detective Winton's failure to scrupulously honor Petitioner's right to remain silent.

Petitioner objects, arguing essentially that Detective Winton never ceased the interrogation, and that his failure to scrupulously honor Petitioner's right to cut off questioning requires suppression of the subsequent confession.  Docket No. 22 at 4.  To support this contention, Petitioner points out three instances during phase two when Detective Winton interrupted and allegedly reinitiated interrogation.

In the first instance, Le Tourneau and her grandmother had said their good-byes and stepped out of the room.  Detective Winton stepped back in and the following exchange occurred:

| | |
|---|---|
| WINTON: | I want to talk to you a little bit more, okay? |
| COBB: | Huh? |
| WINTON: | Pablo, she wants to talk to you. |
| COBB: | Okay.  Okay... |

CT 36.  Le Tourneau then returned to speak with Petitioner again.  Given this context, it appears Detective Winton was not reinitiating interrogation, rather he was asking if Le Tourneau could speak further with Petitioner.

In the second instance, Detective Winton had just brought Petitioner back from the bathroom when the following exchange occurred:

| | |
|---|---|
| LE TOURNEAU: | Where's your shoestrings? |
| WINTON: | Well, you know what they do?  They make him take them out when they go over to the jail, because they don't want somebody to take the shoestrings from them when they sleeping and try to hang themselves or something. |

ORDER

| | |
|---|---|
| LE TOURNEAU: | Oh, my god. |
| WINTON: | Yeah. It's gotten to that point over there unfortunately. There's some crazy people in there. |
| COBB: | The unibomb – the uni – unibomber guy still there? |
| WINTON: | Yeah, he's still over there. He'll be there for awhile. |
| LE TOURNEAU: | Yeah. His trial is being held here. |
| WINTON: | All right. I'll leave you guys alone for a little bit. |
| COBB: | All right. |
| WINTON: | You know, I – I mean, I – I'm – I'm not going to – I'm not going to lie to you, but I talked to her about what – what was going on here, and, you know, it's your decision, but -- |
| COBB: | I know. |
| WINTON: | Be careful. |
| COBB: | Thanks. |

CT 39. Although this brief comment could certainly be deemed the functional equivalent of interrogation, it is very apparent that it is Le Tourneau, not Detective Winton, that convinces Petitioner to confess. None of Detective Winton's comments or questions in phase one, or this isolated comment during phase two caused Petitioner to break. On the contrary, it was only after Petitioner learned how much Le Tourneau had revealed that Petitioner decided to confess. *See* CT 26-27, 40-46.

The third instance pointed to by Petitioner is hardly worth mentioning. After Le Tourneau informed Detective Winton that Petitioner wanted to talk, Detective Winton asked Petitioner if he wanted to talk. CT 46. This can hardly be construed as an impermissible reinitiation of the interrogation.

Given the above, Petitioner's argument that the interrogation never ceased is unsupported by the record.

/////

/////

ORDER

2.  Right to Counsel

The following exchange occurred after Le Tourneau informed Detective Winton that Petitioner was ready to talk:

| | |
|---|---|
| WINTON: | You want – you want to talk to me now? |
| COBB: | Can I – can I talk to you with a lawyer or I have to talk to you? |
| WINTON: | If you want to talk to a lawyer it ends right now, right now, and I take you across the street.  That's how it goes. |
| COBB: | All right. |
| GRANDMA: | (Unintelligible), you can talk to a lawyer.  Let me tell you. |
| COBB: | Well, I want to talk to you. |
| GRANDMA: | If you talk to the lawyer then you cannot talk.  The – the lawyer is not going to let you talk, okay? |
| LE TOURNEAU: | Well, the statement you gave him is going to be it. |

CT 46-47.  Petitioner affirmed two more times that he wanted to talk with Detective Winton.  He then received *Miranda* warnings again and waived them before giving a full confession.

The state court and magistrate judge concluded Petitioner was not entitled to relief on this ground because Petitioner never unambiguously or unequivocally invoked the right to counsel.  The magistrate judge reasoned that "[i]t was unclear from petitioner's question whether he actually wanted an attorney or whether he was simply trying to clarify how to move forward with the questioning."  Docket No. 20 at 26.  The state court added: "[i]n any event, Detective Winton did not begin to pose substantive questions to Cobb until Cobb unequivocally stated that he wanted to talk to Winton, Winton had re-administered Miranda admonitions, and Cobb unambiguously waived his right to counsel."  Docket No. 20 at 25.  Petitioner objects, arguing that his question was an unambiguous and unequivocal request for the assistance of counsel.  Docket No. 22 at 6-10 .

In *Davis v. United States*, 512 U.S. 452 (1994), the Supreme Court articulated the objective test: "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.  Petitioner points us to *Smith v. Endell*, 860 F.2d 1528, 1529-31 (9th Cir.

ORDER

1988), as an example of a clear invocation of counsel.  In that case, the defendant asked: "[c]an I talk to a lawyer?  At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer.  Are you looking at me as a suspect?"  *Smith*, 860 F.2d at 1529.  The court in *Smith* recognized that the statement was conditional and therefore inoperative unless the condition was fulfilled.  *Id*. at 1531.  Because the officers knew the condition to be fulfilled, the remarks were not ambiguous or equivocal.  *Id*.

      Like *Smith*, the question asked by Petitioner in this case cannot be viewed in isolation.  Petitioner did not merely ask "can I talk to a lawyer?"  He asked "can I talk to you with a lawyer or I have to talk to you?"  The state court, applied *Davis* to these facts and determined the statement was ambiguous and equivocal.  Petitioner had clearly decided to tell his story.  His statement can reasonably be construed as a clarification of how to proceed with telling his story rather than a request for counsel.  Given the context, this Court cannot say the state court's decision was an unreasonable application of *Davis*.

3.  Was the confession involuntary and coerced?

      Petitioner argues the totality of the circumstances shows his confession was coerced.  The magistrate judge examined the grounds raised by Petitioner and concluded that Petitioner's "interrogation was not conducted in a coercive atmosphere and did not result in an involuntary confession."  Docket No. 20 at 36.  Petitioner raises several specific objections.

      First, Petitioner objects to the magistrate judge's finding that Le Tourneau did not act as a police agent during her conversations with Petitioner, and that even if she did, her exhortations to tell the truth did not coerce Petitioner into confessing.  Docket No. 20 at 34.  This finding was solidly based on the trial court's credibility determination in favor of Detective Winton made at the suppression hearing.  *Id*.  Petitioner argues that even if Detective Winton did not ask Le Tourneau to coerce Petitioner,  by allowing her into the interrogation room he consciously used her to subjugate the Petitioner to his will.  Docket No. 22 at 11-16.  Petitioner argues that this is similar to *Culombe v. Connecticut*, 367 U.S. 568 (1961).  The trial court judge rightly distinguished *Culombe* on its

ORDER

5

facts.[1]  Allowing Le Tourneau to speak with Petitioner did not violate Petitioner's rights.  *See Arizona v. Mauro*, 481 U.S. 520, 528 (1987) (absent evidence that the police intentionally used the spouse to elicit incriminating statements, allowing a defendant to speak with his spouse knowing the defendant might incriminate himself does not violate the Fifth or Fourteenth Amendments).

Second, Petitioner finds unpersuasive the magistrate judge's finding that Detective Winton's statements were neither coercive nor a promise of leniency.  Docket No. 22 at 17.  In this regard, Petitioner points to the following excerpts of Detective Winton's exact words to Petitioner during the first phase of the interrogation:

> You know, a lot of times we try to – we try – when we talk to people we try to get them to help – to help themselves, okay?  And a lot of times, uh, like I spoke with your mom the other day, we don't want people to throw this whole thing on Pablo Cobb and make him the bad guy in this whole thing.
> ....
>
> First day of the rest of your life, Pablo, okay?  You can – if you can live in your heart about what happened and your involvement in this thing, and you're willing to sit there quietly and let somebody else accuse you of being a big head – head to head part of this whole thing, that's fine.  It's different when you're there.  You get pulled into something that you didn't mean to get pulled into.  It's different when you're there, and you think you guys are going to do one thing and something else happens, okay?
> ....
>
> It's different when you go in there seeing that a friend of yours is getting hurt and stuff, and you're doing what all you can to keep that guy from being killed.  I understand that.
> ....
>
> You've got to decide what – what place in this you're going to have...  Opportunities are few and far apart, Pablo.  You're missing a big one, man, an opportunity here to say your side...

CT 11-18.

---

[1]First, although a majority voted to reverse the conviction in *Culombe*, the portion of the opinion cited by Petitioner was a concurrence joined by only three Justices.  Second, the actions of police were far more egregious than anything even alleged in this case: Culombe was never informed of his rights; when he unequivocally asked for a lawyer the officers did not oblige; his custodial interrogation spanned four days; officers avoided a proper arraignment by presenting him on a breach of the peace charge, officers asked his wife to help obtain a confession, and he had the mental competence of a nine-year-old child.  *Culombe*, 367 U.S. at 607-20.

ORDER

6

The magistrate judge concluded that these statements were not promises of leniency, but at most an expression of personal understanding of Petitioner's predicament.  Docket No. 20 at 35.  The magistrate judge also found that it was not unreasonable for the state court to conclude that there was no causal connection between the statements and any confession.  *Id*. at 36.  Petitioner's reiteration of his assertion that these statements were a promise of leniency has not grown any in persuasiveness.  With regard to the causal connection argument, Petitioner again submits that the interrogation never ceased and the statements made during phase one tainted the subsequent confession.  This has already been rejected.

Third, Petitioner objects to the magistrate judge's comments on Petitioner's relative youth and lack of experience.  The magistrate judge concluded that despite his age of only twenty-one, Petitioner exhibited a fair degree of sophistication in response to Detective Winton's interrogation.  The transcript supports this conclusion, showing that Petitioner was acutely aware of police interrogation tactics such as lying about what others have said.  *See* CT 22.

Finally, Petitioner essentially argues that the magistrate judge failed to consider the totality of the circumstances.  Although the magistrate judge takes each of Petitioner's arguments in turn, it is apparent that the conclusion is based on the totality of the circumstances: "For the reasons described above, petitioner's interrogation was not conducted in a coercive atmosphere and did not result in an involuntary confession."  Docket No. 20 at 36.  This Court agrees, based on the totality of the circumstances, that Petitioner's confession was voluntarily made.

4. Ineffective Assistance of Counsel

Petitioner's ineffective assistance argument is based on his attorney's failure to raise certain additional arguments at the suppression hearing.  The magistrate judge found the state court's rejection of these grounds reasonable.  Petitioner objects to this because the state court found that he had *waived* the argument that Detective Winton's failure to scrupulously honor his right to remain silent made the subsequent confession involuntary.  Docket No. 22 at 21.  Although the state court did find waiver, the magistrate judge correctly noted that it also addressed this ground on the merits, providing a rationale for the purposes of 28 U.S.C. § 2254(d).  The California Supreme Court's

ORDER

perfunctory rejection without citation to a procedural bar is thus a decision on the merits. *See Hunter v. Aispuro*, 982 F.2d 344, 346-48 (9th Cir. 1992).

Finally, Petitioner argues that the state appellate court did not look at the totality of the circumstances in deciding if Detective Winton made a promise of leniency. Petitioner points to statements made by Detective Winton that were not specifically addressed by the state court. Petitioner fails to make clear how this is related to his ineffective assistance claim. Further, it is apparent from the state court's detailed opinion that it considered the totality of the circumstances.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The findings and recommendations filed July 3, 2007, are adopted in full;
2. Petitioner's application for writ of habeas corpus is denied; and
3. The Clerk shall enter judgment in favor of the Respondents.

Dated this the 9th day of January 2008.

      /s/ James K. Singleton, Jr.
      **JAMES K. SINGLETON, JR.**
      United States District Judge

ORDER